Nicole SCONCE, Plaintiff,

v.

**TANDY CORPORATION, Defendant.**

No. Civ.A. 3:96CV–780–H.

United States District Court,
W.D. Kentucky.

July 9, 1998.

Michael L. Boylan, Louisville, KY, for Plaintiff.

Walter L. Sales, Thomas M. Williams, Ogden Newell & Welch, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, an employee of Defendant, Tandy Corporation, says that her supervisor at work sexually harassed her in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Kentucky Civil Rights Act, KRS Chapter 344. Specifically, she makes two kinds of harassment claims: that her supervisor demanded sexual favors as a *quid pro quo* for job benefits and that he created a hostile work environment.[1]

Title VII makes it unlawful for an employer

> (1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e–2(a)(1) (1988).

These 40 words provide "sweeping prohibitions" against all kinds of on-the-job discrimination. Because these words speak so generally, courts have been compelled to flesh out standards which more specifically define prohibited conduct and employer liability for it. No one standard fits every different circumstance. Nevertheless, the core concept of Title VII is quite clear: A change in job conditions based upon sexual misconduct constitutes unlawful discrimination. Courts have established elements for making a *prima facie* case where, as is often true, plaintiffs have no direct evidence of discriminatory intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir.1994). Courts have pointed out that more subtle kinds of sexual harassment, such as *quid pro quo* conduct or creating a hostile work environment, may also constitute a violation of Title VII. *Harris v. Forklift Sys.*

---

1. Kentucky courts rely upon federal case law regarding Title VII to interpret the Kentucky Civil Rights Act. *See Gafford v. General Electric Co.*, 997 F.2d 150, 166 (6th Cir.1993).

*Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Because employers are not liable for their employees' every action, each situation requires a slightly different analysis.

This case is one which has elements of both *quid pro quo* and hostile work environment harassment. Recently, the Supreme Court has cautioned that while these categories may be helpful in making rough demarcations among cases, beyond that they are not determinative. *See Burlington Industries, Inc. v. Ellerth,* — U.S. —, 118 S.Ct. 2257, 2264–65, 141 L.Ed.2d 633 (1998). The Court will keep that advice in mind as it analyzes the conduct alleged here to be unlawful discrimination.

### I.

Plaintiff worked at a Radio Shack electronics store owned by Defendant. She claims that the supervisor of that store engaged in sexually harassing conduct by groping Plaintiff's private areas and making sexual innuendos. The Court assumes that the allegations are true. Plaintiff never welcomed or submitted to these advances. She also never reported them to her employer although she knew Defendant had a policy against sexual harassment. The supervisor also made various threats against Plaintiff, including a threat of retaliation if she told anyone. The supervisor did not follow through on any of the threats. After requesting a transfer to a different store, Plaintiff reported the sexual harassment to the EEOC. Defendant learned about Plaintiff's allegations from the EEOC complaint and conducted an investigation. Defendant reprimanded the supervisor and told the supervisor not to have further contact with Plaintiff. Since going to work in the new location, Plaintiff has endured no further sexual harassment. She has received a promotion to store manager.

### II.

Under the circumstances, these allegations have elements of both *quid pro quo* and hostile work environment harassment. However, Plaintiff's primary allegation is that her supervisor demanded sexual favors in return for job benefits—a *quid pro quo* claim. No doubt Plaintiff emphasizes the

*quid pro quo* harassment because in those circumstances Defendant is strictly liable for the conduct of its supervisor. The Supreme Court has recently explained more clearly why this is so. *See Burlington Industries,* 118 S.Ct. at 2270; *see also Kauffman v. Allied Signal Inc.,* 970 F.2d 178, 186 (6th Cir.1992). To prevail under a *quid pro quo* theory, Plaintiff must show that her submission to the unwelcomed sexual advances was an express or implied condition for receiving job benefits or that her refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment. *See Highlander v. K.F.C. Nat'l Management Co.,* 805 F.2d at 648.

Defendant says that Plaintiff cannot show that she was denied job benefits because she refused to provide sexual favors. Plaintiff claims that her supervisor implicitly demanded sexual favors as a condition of job benefits. The Court accepts this as true. It is also true that Plaintiff rejected all her supervisor's advances. Moreover, she does not identify any job benefits lost nor any adverse decision by her supervisor based upon her response to his advances. In fact, she received job benefits other employees in her position would not normally receive. For instance, she was allowed to attend management training programs despite her low-level position and was promoted to assistant manager although she was less qualified than other candidates. Plaintiff suggests that these benefits were implicitly conditioned upon a sexual relationship because the supervisor wanted to be alone with her at the management meetings and any further promotion depended upon her compliance. However, Plaintiff received these benefits without providing any sexual favors and has never been denied a promotion. Thus on the face of the evidence she suffered no tangible job detriment from her refusal of the supervisor's demands. *See Karibian v. Columbia University,* 14 F.3d 773 (2d Cir.1994) (recognizing that the real inquiry is whether benefits are linked to sexual favors and in a "refusal" case, this link is shown by job detriment); *see also Burlington Industries,* 118 S.Ct. at 2268 (where court defines tangi-

ble job action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

Plaintiff argues that the anxiety from the situation caused her to transfer into a lower paying position at another store. The Court will assume that this is true.[2] We must also assume, as Plaintiff agrees, that she voluntarily requested the transfer. She does not claim she was transferred because she would not submit to the supervisor's advances. The supervisor never threatened Plaintiff with a transfer. In fact, Plaintiff testified that her supervisor did not want her to leave. While she was afraid her supervisor would give her a bad reference, she admits that the supervisor helped her get the transfer by giving a good reference to the district manager. (Plaintiff's dep. at 74–76.) The Supreme Court has made clear that if the supervisor takes no specific job action, then Defendant will not be strictly liable for his conduct. *See Burlington Industries,* 118 S.Ct. at 2270. This conclusion follows from the absence of facts supporting a *quid pro quo* claim.

The Court cannot find any authority or logic which supports such a concept that a self-imposed job detriment should support strict liability. To create such liability in what is referred to as a *quid pro quo* "refusal" claim, the supervisor must do something in addition to making sexual advances. He must do something else which causes or creates a job detriment. The very term "quid pro quo harassment" suggests that the detri-

ment should be a consequence of refusal. If a plaintiff can refuse the sexual advances and then self-impose a job detriment, the circumstances stray quite far from anyone's ability to connect that detriment to the employer as a matter of strict liability. The degree of the *supervisor's* conduct determines the employer's liability. Categorizing that conduct as either a *quid pro quo* or work environment claim helps us do that. In this case, the supervisor created a terrible work environment. He did nothing beyond that. This suggests a "hostile work environment" analysis is more appropriate than a *quid pro quo* analysis.[3] *See Gary v. Long,* 59 F.3d 1391, 1396 (D.C.Cir.1995).

## III.

In truth, Plaintiff's claim sounds more like a "hostile work environment" because it involves only unfulfilled threats. She suffered no tangible employment action.[4] The hostile work environment analysis does not require one to show a tangible job detriment resulting from her refusal to perform sexual favors. Plaintiff can claim sexual harassment if she demonstrates, among other things, that her supervisor's conduct was so severe and pervasive that it affected her work performance and psychological well-being. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The parties seem to agree that Plaintiff has made out a prima facie case of sexual harassment stemming from a hostile work environment.[5]

---

**2.** In fact, there is a question about whether Plaintiff transferred because of the harassment or because of other personal reasons, such as her husband being unemployed. She did not tell Defendant or the EEOC that she wanted to transfer because of the harassment.

**3.** This approach and its conclusion is consistent with the recent United States Supreme Court opinion. In *Burlington Industries,* at 2270,, the Court stated that a threat of job detriment without an actual job detriment imposed by the supervisor is more precisely a claim for hostile work environment and not *quid pro quo* harassment. The Court implicitly found that an employee's constructive discharge because of an intolerable work environment is not a claim for *quid pro quo* harassment.

**4.** In *Burlington Industries,* 118 S.Ct. at 2264, the Supreme Court suggested that Title VII does not require a distinction between *quid pro quo* claims and hostile work environment claims. Nevertheless, the Supreme Court did classify that plaintiff's claim as hostile work environment and not *quid pro quo.* The distinction between *quid pro quo* and hostile work environment harassment is important because the distinction defines a key issue in sexual harassment claims: whether a supervisor awarded or denied an employee job benefits because of her reaction to the harassment.

**5.** To prevail on a hostile work environment claim, Plaintiff must prove that (1) she was a member of a protected class; (2) she was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or

■ For sound reasons employer liability for hostile work environment is "strict" but not absolute. For a number of years in the Sixth Circuit and in some other circuits, an employer could avoid liability by responding adequately and effectively to the complaint once it learns of the harassment. *See Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 184–85 (6th Cir.1992). An employer can further negate its liability if "it has implemented and enforced policies explicitly prohibiting sexual harassment in the workplace and procedures designed to deal with violations of those policies." *Wathen v. General Electric Co.*, 115 F.3d 400, 407 (6th Cir.1997). That is now the law for the entire United States. *See Burlington Industries*, at 2270; *Faragher v. City of Boca Raton*, —— U.S. ——, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998).[6]

In *Burlington Industries*, the Supreme Court addressed the issue of employer liability for hostile work environment and stated that in such cases an employer has an affirmative defense. The Court held that:

> other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile, or offensive working environment that affected seriously her psychological well-being; and (5) the existence of respondeat superior liability. *See Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986). This last element is the primary focus in the United States Supreme Court's decision. *See Burlington Industries; Faragher v. Boca Raton*, —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**6.** The Supreme Court's announcement of an affirmative defense in some ways is no more than the formal and succinct statement of a rule already adopted by several circuits. For instance, the Sixth Circuit already allowed an employer to avoid liability by showing that it has adequate and effective anti-harassment policies and that it responded effectively to the employee's harassment complaint. *See Wathen v. General Electric Co.*, 115 F.3d 400, 407 (6th Cir.1997). Moreover, the Sixth Circuit does not allow such a defense when the harassment complained about is *quid pro quo* harassment, i.e. the supervisor imposed a tangible job detriment. *See Kauffman v. Allied Signal, Inc.* 970 F.2d 178, 186 (6th Cir.1992). Sixth Circuit precedent seems similar

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate ... authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. (citations omitted) The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

118 S.Ct. at 2262.

The Court went on to state that part (a) of the defense often will turn on whether the employer had in place an effective sexual harassment policy and complaint procedure. Furthermore, an employee's failure to follow these procedures will often show that the employee behaved unreasonably. *See id.*

> enough to the new Supreme Court holding that it would often lead to the same result.

> The greater significance of the *Burlington Industries* and *Faragher* opinions is that they explain how this approach fits into the overall framework for deciding sexual harassment cases and finding employer liability for its employees' actions. The opinions rely on the general propositions developed by lower courts and earlier Supreme Court decisions as well as the Restatement to illustrate how the principles of agency law and employer liability for sexual harassment are generally, but not always, compatible. For instance, the Court explains the necessity of an affirmative defense for certain types of harassment, but accepts the general rule that supervisor harassment resulting in a tangible job action will always subject an employer to liability. The Court expounds that if a supervisor imposes a job detriment, then under any theory of agency law an employer would be liable because the employer has implicitly given its imprimatur to the supervisor's conduct. On the other hand, when a supervisor's harassment does not result in a tangible action, the employer's approval or acquiescence is not easily determined. Therefore, an employer should be allowed to prove that it did not implicitly or explicitly aid the supervisor's misconduct. Conditioning employer liability at least in part on its own action or inaction should encourage employers to adopt effective anti-harassment policies.

In this case, it is undisputed that Defendant had an effective policy in place. Defendant provides every new employee with an Employee Handbook which specifically states that sexual harassment is discrimination and considered a violation of company policy. The handbook and employment manual together describe the types of conduct which will not be tolerated and directs employees to submit complaints to one of three offices, including the Director of Employee Relations and provides an address.

Plaintiff admits that she knew of the policy against sexual harassment and knew where to report the misconduct, but decided not to report the conduct. She says her supervisor threatened her with termination.[7] Perhaps Plaintiff feared retaliation or further humiliation because the procedures would not have been administered fairly. However, no evidence suggests that Defendant's procedures were inadequate. In addition to directly addressing sexual harassment, Defendant's policy also avoids a common problem by not requiring that complaints be filed with an immediate supervisor, who, as in this case, may be the harasser.

Of course, when a supervisor threatens termination an employee may reasonably fear retaliation. To be sure, harassing supervisors often threaten termination in order to intimidate and manipulate their victims. Effective complaint procedures are designed to protect against precisely such retaliatory conduct. They are intended to divest a harassing supervisor of any power he has over the victimized employee. It follows that a threat of termination, without more, is not enough to excuse an employee from following procedures adopted for her protection. To hold otherwise would render the affirmative defense meaningless. Evidence that procedures are administered fairly and that an employee is not required to report the misconduct to her harasser demonstrates the unreasonableness of the employee's conduct.[8]

See *Burlington Industries,* 118 S.Ct. at 2270; *Faragher,* 118 S.Ct. at 2293.

Title VII is not designed merely to punish harassing conduct. The statute and the cases also create incentives to prevent harassment from occurring or long continuing. In this case, Plaintiff did not take advantage of the incentives through Defendant's legitimate complaint process. Once Defendant did learn about the allegations from the EEOC complaint, it conducted an investigation and enforced discipline. Plaintiff does not dispute the adequacy of this response. Under these circumstances, Defendant cannot be liable for the sexual harassment by one of its employees as a matter of law.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved for summary judgment on Plaintiff's sexual harassment claims. After thoroughly reviewing the memoranda and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's case is DISMISSED WITH PREJUDICE.

This is a final and appealable order.

---

7. Actually, in her deposition Plaintiff said that her supervisor told her that if she reported the misconduct they would both be terminated, suggesting that the employer would fire them both for the harassment.

8. Of course, a plaintiff can rebut a defendant's affirmative defense and create an issue of fact with evidence that she behaved reasonably due to the particular circumstances. Plaintiff has produced no such evidence in this case.