**Rennie B. VALENTINE-JOHNSON, Plaintiff,**

v.

**Dr. James G. ROCHE, Secretary, Department of the United States Air Force, Defendant.**

No. 01–73345.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 9, 2003.

Daniel Traver, Traver, Walzak & Lepley, Port Huron, MI, for plaintiff.

Alan M. Gershel, Vanessa Miree Mays, Detroit, MI, for defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff Rennie Valentine–Johnson filed suit against defendant alleging Title VII race and sex discrimination and retaliation under 42 U.S.C. § 2000e. Plaintiff asserts that she was subject to disparate treatment and a hostile work environment. Defendant moved to dismiss her complaint, or in the alternative seeks summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is an African–American woman. She began work at Selfridge Air Force Base ("Selfridge") as the Director of Family Readiness in May 1993. Immediately prior to starting her work at Selfridge, plaintiff worked in Wyoming; there she filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discriminatory treatment and retaliation.

To substantiate her race discrimination claim, plaintiff reports specific instances when co-workers made racially derogatory comments about her or about her interracial marriage. In her deposition testimony, she states that she was in the car with a superior who had been drinking and who uttered a racist slur at her. The person who made this remark was not plaintiff's supervisor, but someone who was involved in hiring her. At a training session in 1994, plaintiff overheard another participant tell the instructor that she did not wish to work with plaintiff because she is black. In another instance, plaintiff asked her supervisor Colonel Brown what he

thought of her recent marriage to a white man. He replied "I was shocked."

In support of her sexual harassment claim, plaintiff states that in August of 1993 Colonel Brown put his arm around her shoulders without her consent. On another occasion he came into her office and stood close to her indicating that he would sign certain papers if she was "nice" to him. She also observed flirtatious behavior among other staff members at Selfridge. For instance, she complains that Colonel Brown often touched other women in the office.

In October 1993, plaintiff was called back to Wyoming for mediation concerning her EEO complaint. Though regulations required him to pay for the trip, Colonel Brown reacted angrily when plaintiff brought him her travel request. Plaintiff claims that after this incident she was "shunned" by her co-workers. Colonel Brown allegedly refused to continue as her supervisor, and on December 2, 1993, she was informed that Captain Sutton, a subordinate of Brown, would take over as plaintiff's supervisor. Plaintiff claims that Sutton treated her in a demeaning way, created an unreasonable "plan" for plaintiff's position and was overly critical of her work. On January 12, 1994, plaintiff filed her first EEO complaint letter, alleging harassment, discrimination and retaliation for her EEO activity in Wyoming. She claims that after the filing of this complaint, Colonel Brown had a meeting with plaintiff in which he stated that things would not get better until "the EEO stuff goes away."

In January 1995, plaintiff was fired from her job at Selfridge, and replaced by a white woman. Plaintiff appealed her termination to the U.S. Merit Systems Protection Board ("MSPB") on the basis of

illegal discrimination and retaliation. Plaintiff also filed the previously mentioned complaint with the EEOC for unlawful discrimination. On March 8, 1996, the EEOC issued written notice to plaintiff of her right of election. Plaintiff was given a choice among three procedures to prosecute her EEO claims. Plaintiff chose the first option offered by the EEOC, that is, to hold her termination claims in abeyance and have her non-termination claims heard by the EEOC. The remedy she elected provided that after a final decision by the EEOC and any appeals, she could then pursue the claims regarding her termination with the MSPB.

The EEOC Administrative Judge issued a decision finding no discrimination on all issues on August 4, 1997. The EEOC affirmed the agency's final decision on May 31, 2001, and notified plaintiff of her right to file a civil action in United States District Court within 90 days. On August 30, 2001, plaintiff filed suit in this court.

On December 10, 2001 plaintiff filed a request for a hearing before the MSPB challenging her termination, but did not include any claims that her termination was discriminatory. Plaintiff withdrew her appeal to the MSPB, to "allow her complete case to proceed in the U.S. District Court" on March 14, 2002. The MSPB dismissed her appeal, accordingly, because the withdrawal deprived the board of jurisdiction over her claim.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to summary judgment as matter of law. Fed.R.Civ.P. 56(c).[1] As the moving party,

---

1. Defendant's motion to dismiss or, in the alternative, for summary judgment should be treated as a motion for summary judgment because evidence outside the pleadings has been introduced by both parties. Fed. R.Civ.P. 12(b).

defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of plaintiff's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff must then present sufficient evidence from which a jury could reasonably find for her. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court accepts all of plaintiff's evidence as true and draws reasonable inferences in her favor. *National Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997).

### A. Plaintiff's Termination Claims

The Civil Service Reform Act of 1978, 5 U.S.C. § 7702, sets forth statutory conditions which must be satisfied as a requisite to filing suit in a case involving an action that is appealable to the MSPB and an alleged discriminatory basis for that action. In general, "when an appeal has been taken to the MSPB, until the discrimination issue and the appealable action have been decided on the merits by the MSPB, an appellant is granted no rights to a trial de novo in a civil action under § 7702 or § 7703." *Ballentine v. MSPB,* 738 F.2d 1244 (Fed.Cir.1984).

■ Though the United States Court of Appeals for the Sixth Circuit does not consider failure to exhaust administrative remedies a jurisdictional bar, it is a condition precedent to filing suit in this court. *Kubicki v. Brady,* 829 F.Supp. 906, 909 (E.D.Mich.1993), *Boddy v. Dean,* 821 F.2d 346, 350 (6th Cir.1987). Granting summary judgment is an appropriate remedy where plaintiff has failed to exhaust administrative remedies. *Economou v. Caldera,* 286 F.3d 144 (2nd Cir.2002).

■ Plaintiff is bound by her election of remedies: to have the claims not related to her termination heard by the EEOC and then pursue her termination claims with the MSPB. Instead of following this elec-

tion, plaintiff prematurely withdrew her appeal to the MSPB. Not only did plaintiff not perfect her appeal before the MSPB, she did not include any discrimination claims related to her termination in her MSPB appeal. Plaintiff's termination-related claims are barred by her failure to exhaust administrative remedies with the MSPB.

### B. Plaintiff's Non–Termination Claims

#### 1. Disparate Treatment

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ...race". 42 U.S.C. § 2000e–2(a)(1). Plaintiff claims that she was subject to disparate treatment on the basis of her race because of the comments made to her and about her race.

■ Plaintiff can avoid summary judgment on her disparate treatment claims by showing that race directly played a role in an employment decision, or by presenting evidence that raises an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1997). Here, plaintiff fails to present evidence that racial discrimination directly played a role in an employment decision.

■ In the absence of direct evidence, unlawful discrimination can be established by circumstantial evidence under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discrimination, a plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for his job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individ-

ual outside his protected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

■■ In this case, it is not necessary to establish whether plaintiff performed her job satisfactorily because plaintiff has not brought forth evidence that she suffered an adverse employment action. An adverse employment action is defined as a significant or material adverse change in the terms and conditions of employment. *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir.1999). The requirements for establishing a materially adverse change are met by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.* (adopting standard verbatim from *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993)); *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996) (adopting Crady language in a claim under the Americans with Disabilities Act). In addition, "[t]he Sixth Circuit has consistently held that de minimus employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir.2000). Even a transfer and demotion where the plaintiff received the same salary and benefits did not constitute an adverse employment action. *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987).

■ Plaintiff here fails to establish that she suffered an adverse employment action. She brought forth no evidence that she was denied a raise or promotion on the basis of her race. Plaintiff claims that the relevant employment actions consisted of derogatory comments made to her and about her race. With respect to the two isolated comments made by co-workers regarding her race, it cannot be said that they are linked to a significant change in her employment. In the same respect, plaintiff has not linked the comment about her interracial marriage made by her supervisor to any adverse action taken against her. Based on the case law, the court finds that the plaintiff's complaints regarding comments made about her race do not rise to the level of an adverse employment action.

Viewing all the facts in the light most favorable to Ms. Valentine–Johnson, the court finds that with regard to the third element of her prima facie case and the incidents alleged, she has not established existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### 2. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 also prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court held that a hostile work environment harassment violated Title VII. The court in *Meritor* stated that "for sexual harassment to be actionable, it must be sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment.' " *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399.

■ In order to establish a prima facie case of hostile environment sexual harassment, the plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based

upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile, or offensive working environment that affected seriously her psychological well-being; and (5) the existence of respondeat superior liability. *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 619–20 (6th Cir.1986); *Sconce v. Tandy Corp.,* 9 F.Supp.2d 773, 776 n. 5 (W.D.Ky.1998); *See also Williams v. General Motors Corp.,* 187 F.3d 553, 560–61 (6th Cir.1999).

██ In order to establish the fourth element of a prima facie claim, the plaintiff must show that the harassing behavior was (1) severe and pervasive and (2) both objectively and subjectively offensive. In reviewing her claim on this basis, the court looks to the totality of the circumstances. *Williams,* 187 F.3d at 562. The totality-of-circumstances test must be construed to mean that even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. *Id.* at 563.

██ Plaintiff has not made the required showing that her work environment was objectively offensive. In *Harris,* the Supreme Court suggested a non-exhaustive list of factors that should be considered to determine if a work environment is objectively hostile or abusive. Among other indicators, the court will consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. In support of her claim that she was sexually harassed by her supervisor, plaintiff alleged that Colonel Brown put his arm around her shoulder without her consent. On another occasion, he stood too close to her, indicating that if she was nice to him, he would sign certain papers. Finally, she claims that she was confronted with the inappropriate flirting and touching of other employees in the office. At most, her allegations suggest that plaintiff was subject to behavior which could be considered offensive. However, she has failed to show that the complained-of behavior rises to the level of "severe and pervasive" and that it had the effect of unreasonably interfering with her work performance. Thus, plaintiff is unable to present sufficient evidence of a hostile environment to submit her claim to a fact finder.

### 3. Retaliation

Title 42 U.S.C. § 2000e–3(a) prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an unlawful employment practice.

██ In order to establish a prima facie claim of retaliation, the plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Hafford v. Seidner,* 183 F.3d 506, 515 (6th Cir.1999) (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990)).

The parties agree that plaintiff engaged in a protected activity and that her supervisor was aware of the protected activity. The principal source of disagreement is whether plaintiff suffered an adverse employment action. Plaintiff claims that in retaliation for her EEO activity, her supervisors openly acknowledged that she was being shunned because of the EEO com-

plaint. Further she alleges that her immediate supervisor was changed and it became "more difficult" for her to do her work. Colonel Brown allegedly indicated that plaintiff would not get help until she dropped her EEO complaint. Rather than denying the truth of these allegations, defendant argues that even if plaintiff's allegations are assumed to be true, they come short of establishing an adverse employment change.

■ The hostility in her working environment, which plaintiff attributes to her EEO activity, does not rise to the level of a materially adverse change in the terms and conditions of her employment. She did not suffer a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities. *Hollins*, 188 F.3d at 662. Accordingly, the court finds that plaintiff cannot establish a prima facie case of retaliation, and summary judgment on this issue is appropriate.

## III. CONCLUSION

Plaintiff failed to exhaust her remedies for the discrimination claims related to her termination. As such, her termination claims are barred. With respect to the non-termination related claims, plaintiff has not established a prima facie case of unlawful discrimination. Thus, the court grants defendant's motion for summary judgment on plaintiff's Title VII claims of disparate treatment, hostile work environment and retaliation.

## ORDER

Therefore, defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**