Samson ERUANGA

v.

GRAFTON SCHOOL, INC.

No. CIV. DKC 2001–0549.

United States District Court,
D. Maryland.

Jan. 24, 2002.

John J. Condliffe, Shub–Condliffe & Condliffe, P.A., Mark D. Stave, Law Office, Towson, MD, for Plaintiff.

John S. Vander Woulde, Eccleston and Wolf, Heather S. O'Connor, Eccleston and Wolf, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under 42 U.S.C. §§ 2000–3 *et seq.* ("Title VII") and 42 U.S.C. § 1981 is the motion of Defendant Grafton School, Inc. ("Grafton") to dismiss for failure to state a claim or, in the alternative, for summary judgment on Plaintiff's claims for 1) discriminatory discharge and 2) hostile work environment

discrimination [1]. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court will grant in part and deny in part Grafton's motion for summary judgment.

## I. Background

The following facts are uncontroverted or, unless otherwise noted, set forth in the light most favorable to Plaintiff. Grafton is a private, non-profit Virginia corporation which operates group homes, schools and other facilities for intellectually and physically handicapped children. Paper no. 5, at 2, ex. A, at ¶ 4. Plaintiff Samson Eruanga, a black African male resident of the United States, was hired in November 1997 for the part-time position of Temporary Substitute at Grafton and was promoted to the full-time position of Overnight Residential Supervisor on or about September 9, 1999. *Id.* Plaintiff was employed in that capacity until he was terminated by Grafton effective March 9, 2000. Paper no. 5, at 3, Ex. A, at ¶ 9.

Plaintiff's responsibilities as an Overnight Residential Assistant included providing for the safety and care of students in a residential facility during the night and monitoring the students throughout the night. *Id.*, at ¶ 7, Ex A–1. The "Official Job Description" provided by Grafton states that employees in this position are required to stay awake at all times during their assigned shifts. *Id.* Grafton contends that Plaintiff was discovered sleeping during his shift twice on the night of February 23, 2000, by Sean Lore, his supervisor. Paper no. 5, at 2, Ex A, at ¶ 8, Ex. A–2, A–3. According to Grafton, when confronted by Lore, and later by Lore's supervisor, Keith King, regarding the incident, Plaintiff admitted having fallen asleep. *Id.*, Ex. A–2. Plaintiff was terminated effective March 9, 2000, purportedly on the basis of the sleeping incident. *Id.*, Ex. A–4. Plaintiff offers the sworn statement of his coworker, Carolyn Oladokun, in her April 2000 Montgomery County "Complaint of Alleged Discrimination in Employment", that Lore is alleged to have said to Oladokun some time in 1999, "I will get you niggers out of here". Paper no. 8, Ex. 7. Following Plaintiff's termination, his position was filled by Hernandez Troissant, a black man from Haiti, and then later by Nneke Keke, an African–American woman. Paper no. 5, at 3, Ex. A, at ¶¶ 10, 11.

On or about May 23, 2000, within 180 days of his termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against

---

1. This is one of several related claims by employees against Grafton, all of whom are represented by the same attorney. Monita Short, DKC 2000–223, and Deborah Briscoe, DKC 2001–548, settled. Before it settled, the Short case was consolidated for discovery purposes with Etta Nicole, DKC 2000–324, Franklin Daso, DKC 2000–658, and Susie Sonpon, DKC 2000–1914. Discovery was begun in those consolidated cases pursuant to a January 3, 2001, scheduling order and was partially completed, including some depositions. There has been no formal discovery in this case or those of Kenneth Onuoha, DKC 2001–393, and Carolyn Oladokun, DKC 2001–550. For reasons below, despite the lack of formal discovery in this case, summary judg- ment will be granted in Grafton's favor on Plaintiff's hostile work environment claim, as it will with respect to all the pending hostile work environment claims against Grafton. Ruling on summary judgment before discovery is completed is appropriate for two reasons. First, in his response to Grafton's motion, Plaintiff proffers the fruits of discovery from the consolidated cases. Second, because Plaintiff is called upon to provide evidence of his personal knowledge of incidents which affected his work environment at or around the time they occurred and such evidence could be provided by his own affidavit, he does not need discovery in order to be able to forecast sufficient evidence to support his claim, if it exists.

Grafton. Complaint, at ¶ 7. On January 18, 2001, Plaintiff received a "right to sue" letter from the EEOC based on claims of employment discrimination under Title VII and deprivation of the right to make and enforce contracts under 42 U.S.C. § 1981. Complaint, at § 8. Plaintiff filed this suit promptly after receiving the "right to sue" letter.

In his complaint, Plaintiff asserts that he was discriminated against "regarding the terms and conditions of [his] employment on the basis of race...." Complaint, at § 10. Grafton responded with the pending motion to dismiss or, in the alternative, for summary judgment, challenging the sufficiency of Plaintiff's claim, which it characterizes only as one for discriminatory discharge. In his brief opposing Grafton's motion, Plaintiff lays out the legal standard for hostile work environment and, while he does not do the same for discriminatory discharge, he implies that he would seek to challenge the veracity of Lore's contention that he was sleeping on the job. Additionally, Plaintiff attaches as evidence his Montgomery County "Complaint of Alleged Discrimination in Employment" ("Montgomery County complaint") in which he stated that he was not sleeping and that his supervisor made a false accusation. Paper no. 8, Ex. 21. Also in support of his arguments, Plaintiff recites a timeline of alleged incidents occurring at Grafton between September 1998 and April 2000. Paper no. 8, at 3–5. With the exception of the alleged sleeping incident, all of these incidents involved other employees, not Plaintiff. In two of these incidents, Lore, Plaintiff's supervisor, is alleged to have used the word "nigger" directed at Grafton employees. *Id.*, at 3.

While Plaintiff states in the Montgomery County complaint that co-workers told him of at least one of these incidents, Plaintiff presents no evidence that he was present during or even had knowledge at or around the time of any of the incidents recited in the timeline apart from the alleged sleeping incident.

In its reply to Plaintiff's opposition, Grafton contends for the first time that Plaintiff is attempting improperly to bring the claim for hostile work environment discrimination. Additionally, while Grafton reiterates its opposition to the substance of Plaintiff's discriminatory discharge claim, it argues that Plaintiff was abandoning that claim because he allegedly did not address it in his opposition brief. Finally, Grafton argues for the first time in its reply that, even if the hostile work environment claim was pled properly in the complaint, it should be dismissed for failure to exhaust administrative remedies because it was not in Plaintiff's EEOC complaint.

## II. Standards of Review

Defendant has moved for dismissal, or, in the alternative, for summary judgment. Both parties have submitted material outside the pleadings so the appropriate standard for analyzing Plaintiff's claims is that for summary judgment. While Plaintiff requests in his response that a ruling on Grafton's motion be withheld until discovery is completed (Paper no. 8, at 5), he has not filed an affidavit under Fed.R.Civ.P. 56(f) opposing summary judgment on the grounds that information necessary for his opposition is unavailable or more discovery is necessary.[2] " '[A] party may not simply

---

**2.** Fed.R.Civ.P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.'" *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995), *quoting Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (internal quotations omitted). Thus, it is insufficient for Plaintiff merely to lament the lack of discovery where he "does not focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242. Though the court proceeds with due caution when considering a motion for summary judgment before discovery is completed, here Plaintiff not only has access to the fruits of discovery in the related cases against Grafton, but the evidence needed to support his hostile work environment claim, if it exists, is within his personal knowledge. Given the lack of appropriate affidavits demonstrating specific need for discovery, the court will not delay consideration of the motion in order to await more discovery.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "spe-

cific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

■ Title VII of the Civil Rights Act of 1964 provides that an employer shall not "fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." Because the "at-will employment relationship is contractual . . . such relationships may therefore serve as predicate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass,* II, 242 F.3d 179, 183 (4th Cir.1999), *quoting Spriggs v. Diamond Auto Glass,* I, 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs,* the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both statutes. The court will treat the claims as identical here as well.

### A. *Discriminatory Discharge*

Plaintiff can satisfy his burden of proof for the discriminatory discharge claim by either direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In its motion, Grafton only addresses the sufficiency of Plaintiff's evidence from the standpoint of the *McDonnell Douglas* pretext test. While Grafton argues that Plaintiff would fail to satisfy the third and fourth elements needed to make out a *prima facie* case of discrimination under *McDonnell Douglas,* "[t]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Thurston,* 469 U.S. at 121, 105 S.Ct. 613. The burden shifting formula of *McDonnell Douglas* is designed to allow a plaintiff to use circumstantial evidence to make out a *prima facie* case only in the absence of direct evidence. *Id.* Because Plaintiff offers direct evidence of discriminatory intent, the court must examine Plaintiff's proffered evidence to determine whether it is sufficiently direct to prove discriminatory discharge.

■ Plaintiff provides the April 2000 Montgomery County complaint of his coworker, Carolyn Oladokun, in which she states that she heard Lore, Plaintiff's supervisor, tell her "last year", i.e. in 1999, "I will get you niggers out of here." Paper

no. 8, Ex. 7. "Derogatory remarks may in some instances constitute direct evidence of discrimination." *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 608 (4th Cir.1999), *citing O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 548 (4th Cir.1995), *rev'd in part on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). However, all offensive language is not direct evidence. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and 'unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.'" *Id., quoting McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991) (internal citations omitted). In other words, there has to be a nexus between the offensive remark and Plaintiff's eventual termination for that remark to comprise direct evidence of discriminatory discharge. Plaintiff must present, "'direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion.'" *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995), *quoting Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring). The evidence must be, "of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.*

Plaintiff does not specify how long before Lore recommended his termination Lore allegedly made the statement, but it was some time in 1999, between two and fourteen months before the alleged sleeping incident. Paper no. 8, Ex. 7. An eighteen month lag in time between derogatory statements and termination was one of the factors in *Brinkley* which led that court to find that there was not a sufficient nexus between derogatory statements and an employee's termination. However, there were several other factors in that case which made the connection between the remarks and the plaintiff's termination more attenuated than in the present case, notably that in the interim between hearing the derogatory remarks of the plaintiff's coworker and terminating plaintiff, the employer's Board of Trustees promoted the plaintiff. *Brinkley,* 180 F.3d at 608–609. While it does not appear from the evidence that Lore was the final decisionmaker who terminated Plaintiff and there was at least some lag between his remark and Plaintiff's termination, Lore's statement has a nexus with Plaintiff's eventual termination in two significant ways. First, rather than merely an offensive remark, the precise wording of Lore's statement indicates an intent to remove people of Plaintiff's race from their jobs based on Lore's discriminatory attitude. According to Oladokun's statement, Lore not only referred to at least some of the black workers at Grafton as "niggers," he said he would "get [them] out of here." Paper no. 8, Ex. 7. Second, while Lore was not the final decisionmaker regarding Plaintiff's employment status, he did recommend Plaintiff's termination (Paper no. 8, Ex. 6) and his report that Plaintiff was sleeping on the job, which Plaintiff disputes, served as the sole basis for his termination. Paper no. 5, Ex. A–3.

Taken together, these two factors give Lore's statement a sufficient relationship with the discharge decision so as to make it direct evidence of discriminatory discharge. Accordingly, Grafton's motion for summary judgment on the discriminatory discharge claim is denied.

### B. *Hostile Work Environment*

#### 1. Preliminary challenges

Grafton addresses Plaintiff's hostile work environment claim for the first time in its reply to Plaintiff's opposition (Paper

no. 9) and raises two preliminary challenges which the court must consider before moving to the summary judgment analysis. First, Grafton alleges that Plaintiff only set forth the hostile work environment claim in his opposition to Grafton's motion to dismiss and did not include it in the complaint. In the alternative, Grafton argues that Plaintiff's hostile work environment claim should be dismissed for failure to exhaust administrative remedies because he did not raise it in his EEOC complaint. The court considers these challenges in turn.

▮ Plaintiff stated in the Complaint at ¶ 10:

> ...Defendant engaged in discriminatory practices against Plaintiff regarding the terms and conditions of [his] employment on the basis of race, including but not limited to, engaging in a pattern and practice of humiliation and harassment of Plaintiff; allowing hostile racial slurs and comments by Defendant's white employees to occur without consequence...

The federal rules call for "notice pleading," so the standard for stating a claim is not rigorous. "Under the liberal pleading requirements of the Federal Rules of Civil Procedure, it is not necessary for a plaintiff to set out in detail the facts upon which her claim is based." *Karpel v. Inova Health System Servs.*, 134 F.3d 1222, 1227 (4th Cir.1998). Although, "... a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery,'" *Id., quoting Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462,

466 (9th Cir.1990), Plaintiff's complaint satisfies this standard. Though stated inartfully, language in the Complaint alleging discrimination on the basis of race in the form of humiliation, harassment and racial slurs gives Grafton a fair idea of the basis of Plaintiff's complaint.[3] Accordingly, the court will not dismiss Plaintiff's hostile work environment claim on the ground that he failed properly to plead it.

▮ Grafton argues in the alternative that Plaintiff's hostile work environment claim should be dismissed because it was not included in Plaintiff's EEOC complaint. This argument that the claim should be dismissed because of failure to exhaust administrative remedies is governed by Fed.R.Civ.P. 12(b)(1). A Title VII litigant, "...may not litigate allegations of discrimination which are neither stated in the original charge nor investigated by the EEOC...", *Pritchett v. General Motors Corp.*, 650 F.Supp. 758, 761–762 (D.Md.1986). Although Plaintiff's Montgomery County complaint only arguably included a hostile work environment claim, the court cannot now consider Grafton's exhaustion argument. Whether or not this argument would be valid, because Grafton did not bring it in its motion, Plaintiff was not challenged to bring forth evidence that his EEOC complaint encompassed the hostile work environment claim. Therefore, it is improper to consider it now.

**2. Summary Judgment Motion**

▮ Plaintiff was challenged to provide evidence to support the allegations in his complaint. While Plaintiff has brought

---

**3.** A case argued recently in the Supreme Court presents the question of the specificity of allegations required to state a claim of job discrimination based on age or national origin. *Swierkiewicz v. Sorema*, 5 Fed.Appx. 63 (2nd Cir.2001), *cert. granted,* — U.S. —,

122 S.Ct. 23, 150 L.Ed.2d 805 (2001), *oral argument scheduled,* 70 USLW 3391 (January 15, 2002). This decision could result in a demand for greater specificity in pleading in Title VII cases.

forth a timeline of incidents, he does not present evidence that he had personal knowledge of the incidents on the timeline at or around the time they occurred. Therefore, those incidents do not support Plaintiff's allegations.

■ The Fourth Circuit stated the test for a hostile work environment claim in *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998), *citing Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997):

> To state a claim for hostile work environment, [the plaintiff] must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

In that case, while the Fourth Circuit did not agree with all of the district court's conclusions, it upheld the grant of summary judgment for the defendant on the plaintiff's hostile work environment claim because there were only conclusory and unspecific allegations that the incidents complained of by the plaintiff resulted from animosity based on the plaintiff's race or age. *Id.*, at 801–802.

■ In order to support a claim for hostile work environment, the alleged conduct must not only "create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive." *Spriggs*, 242 F.3d at 184 (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether the harass-ment was pervasive enough to render the work environment objectively abusive:

> . . . the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance."

*Talley v. Farrell*, 156 F.Supp.2d 534, 541 (D.Md.2001), *quoting Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir.2000) (internal citations omitted).

■ In trying to establish his claim, Plaintiff lists a timeline of events that occurred at the school which, he contends, support his claim of a hostile work environment. Paper no. 8, at 3–5. Conduct targeted at persons other than Plaintiff may be considered in support of a hostile work environment claim because, "[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Spriggs*, 242 F.3d at 184, *citing Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 n. 2 (11th Cir.1982). However, Grafton contends that the objective prong of the hostile work environment test cannot be met because Plaintiff makes no allegation that he knew of the alleged incidents in his timeline at or around the time they occurred. Paper no. 9, at 6.

The two incidents in which Plaintiff's supervisor, Sean Lore, allegedly used the word "nigger" to two of Plaintiff's coworkers at the Grafton School are the most troubling as far as creating a hostile work environment. While several of the incidents related in the timeline lack evidentiary support, these two incidents are supported by sworn affidavits of witnesses.

In April, 1999, Lore allegedly told one worker that, "the next time you niggers lock the door I'll write you up." Paper no. 8, at 3, ex. 2, 6. That same month, Lore allegedly told another worker, "I will get you niggers out of here." Paper no 8, at 3, ex. 10. In his Montgomery County complaint, Plaintiff states that co-workers told him Lore had made this second statement. Paper no. 8, Ex. 21. The word "nigger" is more than the "mere offensive utterance" listed as the third factor in the test. No word in the English language is as odious or loaded with as terrible a history. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir.1993) (citation and internal quotation marks omitted).

Even if true, however, use of this language by the supervisor is not sufficient to satisfy the hostile work environment test because there is no evidence, or even allegation, that any of the conduct noted by Plaintiff in his timeline was directed at Plaintiff, occurred in Plaintiff's presence, or even that he was aware of it at the time. In *Walker,* one of the critical factors cited by the court in finding that epithets not directed at the plaintiff affected his work environment was that, "The offensive language was often used in [his] presence." *Walker,* 684 F.2d at 1359 n. 2. In *Spriggs,* another case involving the use of the word "nigger" by a supervisor, not only the highly repugnant nature of the comments, but their frequency and the fact that they were directed at the plaintiff, led the court to conclude that a reasonable jury could find that a hostile work environment existed. *Spriggs,* 242 F.3d at 185 ("[The defendant's] frequent and highly repugnant insults were sufficiently severe or pervasive

(or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere at the Forestville store was racially hostile.") In this case, according to his Montgomery County complaint, Plaintiff did not hear the alleged statements himself but had them related to him by co-workers. There is no allegation that the statements were directed at Plaintiff or even that he knew of them at or around the time they were made. As a result, although the language allegedly used by Lore to his subordinates, if true, is despicable and rises above the level of a mere utterance, it is insufficient to establish a hostile work environment because there is no evidence that it affected Plaintiff's work environment. Therefore, Plaintiff's claim does not meet the objective test described in *Spriggs.* Accordingly, Grafton's motion for summary judgment will be granted as to Plaintiff's claim for hostile work environment discrimination.

## IV. Conclusion

Plaintiff forecasts sufficient direct evidence to support his claim for discriminatory discharge. However, Plaintiff fails to satisfy the standard for hostile work environment discrimination. Accordingly, the court will deny Grafton's motion for summary judgment as to Plaintiff's discriminatory discharge claims under Title VII and § 1981, but grant Grafton's motion for summary judgment as to Plaintiff's hostile work environment claims. A separate order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of January, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED in part and DENIED in part;

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Grafton School, Inc., and against Samson Eruanga on the hostile work environment claim;

3. A telephone scheduling conference will be held 2/12/02 at 9:00 a.m.. Counsel for Plaintiff is directed to arrange and initiate the call to counsel for Defendant and the court; and

4. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.