**Michael O. FRANK, Plaintiff,**

v.

**Gordon R. ENGLAND, Secretary, U.S. Department of the Navy, Defendant**

**No. CIV.A.AW–02–1874.**

United States District Court, D. Maryland, Southern Division.

April 7, 2004.

Lisa Lyons Ward, Ellicott City, MD, for Michael O. Frank, Plaintiff.

Allen F. Loucks, Office of the United States Attorney, Neil R. White, Office of the United States Attorney, Harriet E. Cooperman Saul Ewing LLP, Baltimore, MD, for Gordon R. England, Secretary Department of the Navy, Cherokee Nation Industries, Hansford T. Johnson, Acting Secretary, Department of the Navy, Defendants.

## *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Plaintiff Michael O. Frank brought this suit against his employers Cherokee Nation Industries ("Cherokee Nation") and Gordon R. England, Secretary of the United States Department of the Navy ("Navy"). Plaintiff alleges that Defendants discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* Pending before this Court is Defendant's Motion to Dismiss or For Summary Judgment [52]. Plaintiff has failed to file an Opposition and the deadline for doing so has passed.[1]

---

1. In an Order dated February 13, 2004, this Court granted Plaintiff's counsel an extension

No hearing is necessary. *See* D. Md. R. 105.6. For the reasons stated below, this Court will **GRANT** Defendant's motion.

## I. Factual and Procedural History

In October 1991, Plaintiff became employed by Cherokee Nation, which had a contract with the Navy to provide medical laboratory services to the National Navy Medical Center ("NNMC") in Bethesda, Maryland. Plaintiff spent his first five months of employment working in the phlebotomy area, collecting and preparing samples to be analyzed in the laboratory. Plaintiff subsequently moved to the microbiology section, starting the "accession" area, which involves the processing of specimens for analysis. After approximately four to six weeks, Plaintiff began working at one of the "benches" in the laboratory. According to Plaintiff, there were five benches: urinalysis, respiratory, sterile fluid, and stool and open parasite. Prior to his assignment to the benches, Plaintiff had not analyzed any specimens at NNMC; his prior work involved collecting and preparing specimens for others to analyze.

On December 9, 2001, Ms. Debra Ebright, Plaintiff's supervisor, wrote a letter to Cherokee Nation recommending Mr. Frank's termination and laying out her reasons for doing so. Her letter indicates that; (1) Mr. Frank was unable to perform his duties without supervision; (2) his performance did not improve after one-on-one instruction; (3) he made repeated mistakes; (4) he was frequently absent from work between 3:00p.m. and 4:00p.m. when his work schedule was 7:30a.m. to 4:00p.m. The letter also described in further detail particular mistakes made by defendant and attached a typical bench discrepancy list from work that was assigned to Plaintiff. Mr. Frank was terminated from his employment at the NNMC on December 21, 2002.

Plaintiff subsequently filed a complaint of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").[2] On or about February 28, 2003, the EEOC issued a Dismissal and Notice of rights, advising Plaintiff of his right to pursue his claim in the district court.

On March 4, 2002, Plaintiff filed suit against Defendants requesting relief on seven counts of disparate treatment based on his race. In an Order dated April 28, 2003, this Court dismissed the claims as against Cherokee Nation for lack of subject-matter jurisdiction. Following discovery, the Navy filed this motion to dismiss or for summary judgment.

## II. Standard of Review

### A. Rule 12(b)(1)

This Court has previously held that motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *Khoury v. Meserve,* 268 F.Supp.2d 600, 606 (D.Md.2003) (citing *Onuoha v. Grafton School,* 182 F.Supp.2d 473, 481 (D.Md.2002)).[3] The Fourth Cir-

of time in which to file an Opposition. Plaintiff's counsel, however, failed to file an Opposition by the deadline she requested.

2. There appears to be confusion as to whether Plaintiff filed the EEOC complaint against both Cherokee Nation and Navy.

3. The Court notes that the Fourth Circuit has found that *timely* exhaustion of administrative

remedies is not a jurisdictional requirement. *Zografov v. Veterans Admin. Med. Ctr.,* 779 F.2d 967, 969 (4th Cir.1985). In the instant case, however, the timing of the exhaustion is not at issue: Defendant claims that Plaintiff completely failed to participate in the Navy's administrative process and procedures for employment discrimination claims.

cuit has made clear that the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991). Furthermore, in a motion to dismiss for lack of subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* To this end, the allegations in the Complaint are not controlling. *Trentacosta v. Frontier Pacific Aircraft*, 813 F.2d 1553, 1559 (4th Cir.1987). As a result, "the district court should apply the standard applicable to a motion for summary judgment." *Richmond*, 945 F.2d at 768.

### B. Rule 56

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Comty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to

be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that he has access to admissible evidence for presentation at trial. *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548. For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. Analysis

Preliminarily, Defendant has posited that Plaintiff was an employee of only Cherokee Nation and not the Navy for Title VII purposes. As Defendant concedes, Title VII can be read as permitting an employee to have multiple employers. *See, e.g., King v. Dalton*, 895 F.Supp. 831,

837–39 (E.D.Va.1995); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith,* 611 F.Supp. 344, 347–49 (S.D.N.Y.1984); *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 245 (E.D.N.Y.1994). The Court, however, agrees with Defendant's assertion that a determination of whether Frank was an employee of both Cherokee Nation and the Navy is not necessary because Plaintiff failed to exhaust his administrative remedies against the Navy and to establish a *prima facie* case of discrimination.[4]

### A. Exhaustion of Administrative Remedies

Before an employee has standing to pursue a claim against a federal employer under Title VII, he must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination. *See* 42 U.S.C. § 2000e–16(c); 24 C.F.R. 1614.110. Indeed, "the purpose of the exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Wade v. Secretary of the Army,* 796 F.2d 1369, 1377 (11th Cir.1986).

Defendant contends that Plaintiff failed to exhaust his administrative remedies against the Navy by neglecting to file a claim with the Navy's EEO office. Defendant points out that by failing to be counseled by and by failing to file a complaint with the Navy's EEO office, Plaintiff did not follow the procedures promulgated in 29 C.F.R. § 1614.106.[5]

Defendant further argues that Plaintiff's status as an employee of Cherokee Nation does not provide him with an "escape hatch" from the exhaustion requirement. Defendant points to guidance issued by the EEOC in support of this contention. In 1997, the EEOC issued guidance addressing the steps an employee who believes he has been discriminated against should take when pursuing a discrimination complaint against the federal sector, when that employee works for "staffing firm" and is "on a job assignment with a federal agency." *See* EEOC Notice No. 915.002, Dec. 3, 1997, as reprinted in the EEOC Compliance Manual, Question 9 at 14–15 & n. 35. The guidance provides as follow:

> If the staffing firm worker seeks to pursue a complaint against the federal agency as his or her employer, (s)he should contact an EEO Counselor at the federal agency within 45 days of the date of the alleged discrimination. If the individual also seeks to pursue a claim against the staffing firm, (s)he should file a separate charge with an EEOC field office. In such circumstances, the EEOC investigator should alert the individual as to the different time frames and procedures in the federal and private sectors.[35] The investigator should also contact the EEO office of the federal agency once the individual files the federal sector complaint in order to coordinate the federal and private sector investigation. [footnote omitted].

\*　　\*　　\*　　\*　　\*　　\*

35 If the federal agency refuses to accept the complaint based on a belief staffing firm worker is not its employee, the worker can file an appeal with the

---

**4.** The Court further notes that neither party has provided the Court with sufficient information to make such a determination at this stage.

**5.** Specifically, Plaintiff failed to consult the Navy's EEO counselor "within 45 days of the date of the matter alleged to be discriminato-

ry." 29 C.F.R. § 1614.105(a)(1). While this Court is analyzing Defendant's claims under a 12(b)(1) standard, and therefore is not ruling on the timeliness of the exhaustion of remedies, the Court notes that Plaintiff's claim could also be dismissed under the 12(b)(6) standard. *See Zografov,* 779 F.2d at 970.

Commission's Office of Federal Operations.

*Id.* Defendant contends that statements Plaintiff made in deposition testimony further support the conclusion that he failed to proceed with the Navy's EEO procedures. Plaintiff admitted he did not file a complaint with the Navy. He stated, however, that he placed a phone call to the Navy's EEO office, at which time he was referred to the EEOC's office in Baltimore. Plaintiff could not specify whether he requesting processing a complaint against the Navy or simply against Cherokee Nation. Defendant posits that the Navy instructing the Plaintiff to contact the EEOC's office in Baltimore leads to the conclusion that Plaintiff asked about processing a complaint against only Cherokee Nation.

■ Preliminarily, the Court notes that it would be unreasonable to consider the Navy a second employer under Title VII, but exempt Plaintiff from exhausting his administrative remedies as to the Navy. Furthermore, the Court is persuaded by Defendant's arguments. As such, the Court finds that the evidence clearly demonstrates that Plaintiff did not pursue administrative remedies against the Navy. The Court further notes that while guidance issued by the EEOC is not binding on this Court, it is nevertheless somewhat instructive. As such, the Court believes that the EEOC guidance discussed above makes clear that the Plaintiff had an obligation to exhaust the administrative remedies available through the Navy. His failure to do so is fatal to his claim. Accordingly, Plaintiff lacks standing to pursue a Title VII claim against the Navy.

### B. Discrimination Claim

Defendant has also moved, in the alternative, for summary judgment based upon Plaintiff's failure to state a *prima facie* case of discrimination and his failure to prevail under the *McDonnell Douglas* burden-shifting framework.

A plaintiff can establish discriminatory intent under Title VII in two ways: (1) through direct evidence of discriminatory animus, or (2) through the application of the burden-shifting analyses employed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff Frank has not provided direct evidence, and, as a result, the Court's analysis will follow the *McDonnell Douglas* 0scheme. As such, Plaintiff must first establish a *prima facie* case of discrimination, which creates 0an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once Plaintiff has demonstrated a *prima facie* case, the burden shifts to Defendant to rebut by providing "legitimate nonretalitory reasons for the adverse action." *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985)). The burden then reverts to the employee to "establish by a preponderance of the evidence that the proffered reasons are pretextual." *Id.* To this end, Plaintiff must prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Cerberonics,* 871 F.2d at 456. While the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (1981). Nevertheless, "the burden of establishing a prima facie case of disparate treatment is not onerous." *Id.*

### A. Prima Facie Case

■ In order to establish a *prima facie* case of discrimination, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees outside his protected class. *McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cerberonics,* 871 F.2d at 455; *Raley v. Bd. of St. Mary's County Comm'rs,* 752 F.Supp. 1272, 1278 (D.Md.1990).

■ Furthermore, in order to establish a *prima facie* case of discriminatory discharge, in particular, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected class. *King v. Rumsfeld,* 328 F.3d 145, 149 (4th Cir.2003) (citing *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir.1999)). This case turns on whether Plaintiff's work performance was satisfactory.

Plaintiff has provided no evidence that his performance was satisfactory. At most, Plaintiff has simply maintained that he thought he was following the standard procedures. This assertion, by itself, however, is not sufficient to establish a *prima facie* case and survive summary judgment.

■ On the other hand, Defendant has provided clear evidence that Plaintiff was not performing his duties in an acceptable manner. Defendant argues that Frank's problematic work performance led to his discharge. Defendant points out that in her December 10, 2001 letter recommending Plaintiff's termination, Plaintiff's supervisor listed a number of deficiencies in Plaintiff's work performance. In particular, Ms. Ebright stated that, in less than six months, Plaintiff made seventy-one (71) errors that could lead to incorrect treatment or no treatment of patients. Ms. Ebright further claimed that Plaintiff repeated the same mistakes daily and did not improve after one-on-one instruction. In addition, Ms. Ebright wrote that Plaintiff was frequently absent from work between 3:00p.m. and 4:00p.m., although his scheduled hours were 7:30a.m. to 4:00p.m. Ms. Ebright's letter makes clear that Defendant observed Plaintiff performing below a satisfactory level. Accordingly, Plaintiff has failed to establish a *prima facie* case.[6]

### B. McDonnell Douglas Burden–Shifting Framework

■ Even if Plaintiff's assertions about his performance level were sufficient, Plaintiff's claim would fail because Defendant's arguments regarding Plaintiff's insufficient work performance constitute legitimate business reasons for Plaintiff's termination, and Plaintiff has failed to demonstrate that Defendant's reasons are merely pretext for discrimination. Plaintiff testified during his deposition that he believed Defendant's reasons for terminating him were pretext because another technician was not rotated through the accession area as Plaintiff was, and because it appeared that another Cherokee Nation employee was able to receive compensatory time. The

---

**6.** The Court expresses reservation that Plaintiff has demonstrated that his position was filled by a similarly qualified person outside Plaintiff's protected class. In light of the other insufficiencies discussed in this opinion, the Court finds it unnecessary to explore this factor.

Fourth Circuit has made clear that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Cerberonics,* 871 F.2d at 455. As such, under the burden-shifting framework, Plaintiff's claim fails.

## IV. Conclusion

The Court finds that Plaintiff failed to: (1) exhaust his administrative remedies, (2) establish a *prima facie* case; and (3) establish that Defendant's legitimate reasons for terminating Plaintiff were pretext for discrimination. Accordingly, the Court will grant Defendant's motion to dismiss or for summary judgment. An order to this effect will follow.