**Susan KHOURY**

**v.**

**Richard A. MESERVE**

**No. CIV.A.DKC 2002–3511.**

United States District Court,
D. Maryland.

June 23, 2003.

Sol Zalel Rosen, Law Offices of Sol Zalel Rosen, Washington, DC, for Plaintiff.

Ariana Wright Arnold, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by Plaintiff Susan Khoury, are: (1) the Motion of Defendant Richard A. Meserve, Chairman of the Nuclear Regulatory Commission (NRC), to Dismiss or for Summary Judgment and (2) Plaintiff's Motion for Leave to File Surreply. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons

that follow, the court will: (1) deny Plaintiff's motion for leave to file surreply; (2) grant Defendant's motion to dismiss Plaintiff's discriminatory denial of promotion, denial of rights, and gender- and national origin-based discriminatory discharge claims; (3) deny Plaintiff's request for a stay in consideration of summary judgment; and (4) grant Defendant's motion for summary judgment on Plaintiff's hostile work environment and retaliation claims.

## I. Background

### A. Discrimination in the Workplace

The following are facts alleged by Plaintiff. Plaintiff was employed by the Office of the Inspector General (OIG) at the Nuclear Regulatory Commission (NRC) in Rockville, Maryland. She began her employment with the NRC in January 1997 as a GS–1811–11 criminal investigator. Plaintiff alleges that she began to experience discriminatory treatment soon after beginning her employment with the NRC. Plaintiff claims that her supervisor, Mr. Stryker (Stryker), lacked communication skills in dealing with female employees and treated male members of his staff more favorably. Plaintiff was unfairly disciplined and criticized, did not receive awards while her male counterparts did, and her promotion to the GS–12 level was delayed because of her national origin and gender. Plaintiff alleges that even after a new supervisor took over, the same mistreatment continued.

In October 2000, Plaintiff was given a performance appraisal that was deliberately worded in a manner that effectively precluded her from successfully competing for a GS–14 vacancy she was applying for.

Plaintiff was not selected for the position. Plaintiff alleges that the selection for the two openings was designed to favor and pre-select two Caucasian males and that the positions were in fact awarded to two Caucasians.

### B. Discrimination Complaint

The following facts concerning Plaintiff's filing of a discrimination complaint with the EEO are uncontroverted. Plaintiff contacted an EEO Counselor on March 13, 2001. This informal EEO counseling was completed on June 13, 2001 and the counselor issued a report shortly thereafter. On or about July 9, 2001, Plaintiff filed a formal complaint of discrimination with the NRC's Office of Small Business and Civil Rights (SBCR).[1] In April 2002, by its Partial Acceptance and Dismissal of Claims in Discrimination Complaint Letter (SBCR Letter), Paper 7, Ex. 3, the SBCR dismissed some of Plaintiff's claims as untimely but referred the remainder of her claims for investigation. An investigation then followed, yielding an EEO Report of Investigation in October 2002. Plaintiff then filed a complaint in this court, pursuant to 29 C.F.R. 1614.407(b), on October 25, 2002 and on December 2, 2002, the EEO investigation was dismissed pursuant to 29 C.F.R. 1614.107(3) because Plaintiff's claims had become the basis of pending litigation.

### C. Termination

Plaintiff alleges that in December 2000, she filed a grievance regarding her FY 2000 performance rating. Plaintiff alleges that her rights were denied in the processing of that grievance. In an attempt to review files she had worked on in order to substantiate the allegations contained in

---

**1.** Details regarding these events and Plaintiff's particular claims will be discussed below.

her grievance complaint and to dispute the denial, Plaintiff accessed closed investigation cases from storage.[2] She was placed on administrative leave in May 2001; her NRC identification card, weapon, badge, and keys were confiscated and she was prohibited from going to work. Plaintiff alleges that this was disparate treatment based on Plaintiff's gender and ethnicity (i.e., national origin), and an act of retaliation. On November 16, 2001, the NRC issued a Notice of Proposed Removal requesting that Plaintiff be removed from her position for making false statements, failing to follow supervisory instructions, and improperly accessing sensitive information. Plaintiff was ultimately removed in February 2002. Plaintiff maintains that the reasons the Agency gave for her termination were spurious.

### D. Procedural Background of the Current Action

On February 20, 2002, Plaintiff appealed her termination to the Merit Systems Protection Board (MSPB). On August 28, 2002, the MSPB sustained the NRC's sanction and the MSPB decision became final on October 2, 2002. On October 25, 2002, Plaintiff filed the present action in this court to seek review of both the MSPB and EEO administrative outcomes.

In the current action, Plaintiff claims that she was denied terms and conditions of employment by her supervisors and that she was subjected to illegal employment conditions based on her gender, national origin, and as a result of retaliation. Plaintiff also alleges that the NRC unreasonably delayed processing the EEO investigation, causing additional injuries to Plaintiff and ultimately leading to her termination.

Defendant filed his motion to dismiss or for summary judgment on February 3, 2003. Plaintiff filed her opposition on March 10, 2003 and argued, *inter alia*, that it is premature to consider Defendant's motion for summary judgment because more discovery is needed. Plaintiff filed an affidavit in support of the request for discovery as required by Fed.R.Civ.P. 56(f). Defendant replied on March 28, 2003 and argued against Plaintiff's request for discovery. Plaintiff then filed a motion for leave to file a surreply on April 7, 2003. Defendant opposed this motion on April 25, 2003.

### II. Motion for Leave to File Surreply

Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed. Local Rule 105.2(a). Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply. *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001).

Plaintiff argues that she is justified in filing a surreply because Defendant has raised two new issues in his reply memorandum, i.e., (1) the sufficiency of Plaintiff's Rule 56(f) affidavit seeking time for

**2.** Defendant claims that on May 7, 2001, Plaintiff's supervisors became aware that Plaintiff had accessed the closed files from storage and learned that she had done so without proper authorization. According to Defendant, when Plaintiff was confronted, she admitted to taking some of the closed files home, but insisted that she had only taken chron logs. Her supervisors then demanded the return of the files. When Plaintiff returned the materials, she presented Reports of Interviews (ROIs) but no chron logs and denied that she had any more materials at home. When the Inspector General learned that Plaintiff had taken ROIs, he directed that she be placed on administrative leave while an investigation was made into the matter. The investigation revealed that Plaintiff had additional OIG documents at her home, even after being instructed to return them.

discovery before the court considers Defendant's summary judgment motion and (2) allegations pertaining to Plaintiff's alleged failure to exhaust administrative remedies. Plaintiff also seeks to correct what she perceives to be Defendant's misrepresentations regarding the state of the administrative record and the scope of requirements involved in reviewing the decisions of Administrative Judges.

Plaintiff filed her Rule 56(f) affidavit along with her opposition to Defendant's motion to dismiss or for summary judgment. Defendant's challenge to the sufficiency of Plaintiff's affidavit and request for discovery is therefore a response to a matter first introduced by Plaintiff. Plaintiff had the opportunity to support her affidavit with arguments and facts in her opposition brief; a surreply would not provide Plaintiff with her first chance to address the issue. Likewise, the matter of Plaintiff's exhaustion of administrative remedies was raised by Defendant in his original motion to dismiss or for summary judgment; Plaintiff has already had ample opportunity to contest Defendant's challenge. Finally, Plaintiff contends that her surreply corrects Defendant's misrepresentation of the record of Plaintiff's administrative proceeding and standard of review of the decisions of Administrative Judges. Nevertheless, this contention also does not address a new matter. *See Lewis,* 154 F.Supp.2d at 61. The court will therefore deny Plaintiff's motion for leave to file surreply.

## III. Motion to Dismiss or for Summary Judgment

### A. Standards of Review

#### 1. Dismissal: Exhaustion under Rule 12(b)(1)

Motions to dismiss for failure to exhaust administrative remedies are governed by Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *See Onuoha v. Grafton School,* 182 F.Supp.2d 473, 481 (D.Md.2002). In a Rule 12(b)(1) motion, the court may look beyond the pleadings and "the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993) (citations omitted); *see Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). It is the plaintiff's burden to prove that jurisdiction in this court is proper. *See DeBauche v. Virginia Commonwealth Univ.,* 7 F.Supp.2d 718, 721 (E.D.Va.1998). The court must presume that all factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor. *Id.*

#### 2. Summary Judgment: Rule 56

It is well established that a court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979). A material fact is one that constitutes an element that is essential to a party's case. *Celotex v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548. As the Supreme Court stated in *Anderson,* "... the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." 477 U.S. at 248, 106 S.Ct. 2505.

A genuine issue as to a material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. While it is the movant's burden to show the absence of a genuine issue of material fact, *Pulliam Investment Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987), it is the non-moving party's burden to establish its existence. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence that the non-moving party presents to this end must be more than a "mere scintilla," *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984), more than "merely colorable," *Celotex v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548, and more than "some metaphysical doubt." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. In order for the non-moving party to survive summary judgment, it must present evidence that is "significantly probative." *Celotex v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548. In a motion for summary judgment, the inferences that the court draws from the facts and evidence presented shall be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Pulliam,* 810 F.2d at 1286; *Gill,* 773 F.2d at 595.

### B. Dismissal: Failure to Exhaust

1. *Discriminatory Denial of Promotion Claim*

 ▮▮▮ Defendant challenges Plaintiff's allegation that she was discriminatorily denied a promotion when she failed to be selected for the GS–14 criminal investigator positions that were announced in Octo-ber 2000. Defendant notes that although Plaintiff claims she filed a timely EEO complaint with regard to this allegation, Plaintiff did not raise her claim of discriminatory failure to promote in her administrative complaint, her request for EEO counseling, her formal complaint, or in the letter of partial acceptance and dismissal. As the Fourth Circuit has stated,

> Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir.2000). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Id.* "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.,* 665 F.2d 482, 491 (4th Cir.1981).

*Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132 (4th Cir.2002). Defendant therefore urges that Plaintiff's claim for discriminatory denial of promotion be dismissed for failure to exhaust administrative remedies.

A review of Plaintiff's EEO Counselor's Report shows that Plaintiff did raise the issue of her failure to make the best-qualified list for the GS–14 job positions due to the language in her FY 2000 Appraisal and the selection of two Caucasian males for the position instead. Paper 7, Ex. 1, at 3. The Formal Discrimination Complaint that Plaintiff filed with the NRC cites Scenna's FY 2000 evaluation of Plaintiff and his repeated attempts to force Plaintiff to sign the evaluation as an attempt "to prevent Ms. Khoury from successfully applying for a promotion to the GS–14 level in Decem-

ber of 2000 ...." Paper 7, Ex. 2, at 6. Plaintiff does not specifically invoke the phrase "discriminatory denial of promotion" with these allegations, however, it is possible to infer that Plaintiff was trying to do so.

Nevertheless, the SBCR Letter defines Plaintiff's claims, based on her formal Complaint with the NRC, as: (1) delay of promotion to GS–12 level; (2) a claim of discrimination based on gender and national origin when, on December 1, 2000, she received her FY 2000 performance appraisal which included comments she found unacceptable and gave her a summary rating of "excellent" instead of "outstanding," Paper 7, Ex. 3, at 2; and (3) a claim of hostile work environment harassment comprised of acts that included Scenna's attempt to prevent Plaintiff from successfully competing for a promotion when he tried to pressure her into signing her FY 2000 appraisal. *Id.* at 3. The SBCR Letter does not define Plaintiff's claims explicitly to include one for discriminatory denial of promotion. Based on the SBCR Letter, therefore, it appears that Scenna's FY 2000 appraisal of Plaintiff and his attempts to force Plaintiff to sign the appraisal have been characterized as being part of a discriminatory performance appraisal grievance (which was dismissed by the SBCR for failure to seek counseling within 45 days, *id.*, at 4–5) and as part of a hostile work environment claim, but not as an independent unfair denial of promotion claim.

According to the SBCR Letter, Plaintiff had the right to disagree with the issues as defined in the SBCR Letter by submitting a written statement within ten calendar days of receipt of the SBCR Letter, *id.* at 4, and to amend her complaint any time prior to the completion of the investigation to include new issues or claims that were like or related to the claims in her com-

plaint. Plaintiff has not provided any evidence to show that she either submitted a written statement to the NRC disagreeing with its definition of her claims or amended her complaint to include a specific claim of unfair denial of promotion, nor has she opposed Defendant's motion to dismiss the unfair denial of promotion claim. Plaintiff has therefore failed to exhaust administrative remedies with respect to this claim. *See Sloop v. Memorial Mission Hospital, Inc.,* 198 F.3d 147, 149 (4th Cir.1999) (holding that plaintiff who took no official action to amend her administrative charge of discrimination had not exhausted administrative remedies with respect to claim not included in the original charge). Defendant's motion to dismiss the denial of promotion claim will be granted.

### 2. Denial of Rights Under Grievance Procedures

Defendant argues that Plaintiff's claim that she was denied her rights under the NRC's grievance procedures must be dismissed for failure to exhaust administrative remedies because Plaintiff never included this claim in her administrative complaint. Plaintiff counters that she has sought the appropriate remedy allowed to her by statute for the NRC's violations in placing her on administrative leave by bringing this case in federal court. According to her Complaint in the case at bar, Plaintiff's entire action against Defendant has been brought pursuant to Title VII. As noted above, Title VII requires a plaintiff to file a charge with the EEOC first and the EEOC charge defines the scope of the civil suit that a plaintiff may institute. A review of the relevant documents reveals that the claim that Plaintiff was denied her rights when the NRC allegedly violated its procedures in placing Plaintiff on leave is absent from Plaintiff's EEO Counselor's Report, Formal NRC Complaint, and the SBCR Letter. Fur-

thermore, the SBCR Letter notes that Plaintiff's subsequent communications with the SBCR about her placement on administrative leave by the NRC would be treated, pursuant to the letters and a telephone conversation with Ms. Marva Gary, Civil Rights Program Manager for the SBCR, as background information to the claims that had already been made and defined, and not as requests to amend the complaint.[3] Defendant's motion to dismiss the denial of rights claim must therefore be granted.

### 3. Hostile Work Environment Claim

 Defendant argues that Plaintiff's hostile work environment claim must be dismissed because it was not timely brought. In her complaint, Plaintiff alleges that she was subjected to a hostile work environment because of her opposition to her supervisors' discriminatory treatment of her based on her gender and national origin. Plaintiff points to the delay in her promotion to GS–12, repeated criticism by her supervisors, and delay in her EEO investigation as examples of this hostile, discriminatory treatment.

A federal civilian employee has 45 days to initiate contact with an EEO Counselor after the occurrence of an employment action or matter that she believes to be discriminatory. 29 C.F.R. 1614.105(a)(1). As the Supreme Court has noted,

> [h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal citations omitted). The Court concluded that "[a] charge alleging a hostile work environment claim [ ] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.*, at 122, 122 S.Ct. 2061.

Plaintiff first contacted an EEO Counselor on March 13, 2001. In order for her claim to be timely, therefore, at least one act constituting her hostile work environment claim must fall between January 27, 2001 and March 13, 2001. Defendant argues that the last act that Plaintiff alleges in her hostile work environment claim is the "putative plot to pressure her into signing her performance appraisal" which, according to Plaintiff, occurred in December 2000. Alternatively, Defendant argues that the acts that Plaintiff alleges as the basis of her hostile work environment claim are actually discrete acts that are not capable of being linked together as part of a "continuing violation" subject to the hostile work environment holding in *National Railroad*.

A review of the administrative complaint and records which define the scope of Plaintiff's Title VII claim reveals that

---

**3.** The SBCR Letter states: "By letters dated August 24, 2001, November 20, 2001, and February 13, 2001, you informed SBCR of subsequent actions your Client was alleging to have been committed by the Agency. Specifically, by letter dated August 24, 2001, you informed SBCR that, on May 7, 2001, the Agency had placed your Client on administrative leave, and that, as of August 24, 2001, your Client was still on administrative leave.... Pursuant to these letters and your telephone conversation with Ms. Marva Gary, Civil Rights Program Manager, SBCR, we are treating the information contained in these letters as background information, rather than as request to amend your Client's complaint." Paper 7, Ex. 3, at 3.

Plaintiff's hostile work environment claim was defined to include the allegation that Plaintiff was forced to sign a performance appraisal in addition to the following acts of harassment: over-scrutiny of Plaintiff's work by Scenna, Stryker, and Mulley; being placed by Stryker on more stringent deadlines in 1997 or 1998, only being allowed to submit the final case report through her male partner even though she was the lead investigator, and not being given an award for the work although her male partner received an award; being refused meetings with Stryker to discuss cases and, when granted a meeting, being offered only vague guidance; not being addressed by Stryker in progress meetings when a male partner was present; being labeled a poor writer by Scenna, Stryker, and Mulley and having her ability as a criminal investigator questioned in front of her peers; being undermined when Scenna overrode decisions Plaintiff had made as Office Training Coordinator regarding new training classes and other activities; not being allowed by Scenna and Stryker to conduct briefings on a majority of her cases and, when allowed to conduct the briefings, being constantly interrupted. Paper 7, Ex. 3, at 2–3. The complained of acts include individual acts and treatment that can be characterized as part of an on-going pattern of disrespect, abuse, and harassment that extended to the period between January 27 and March 13, 2001 and beyond. The court will therefore deny Defendant's motion to dismiss Plaintiff's hostile work environment claim as untimely.[4]

#### 4. Termination Claims Based on Gender and National Origin

■■■■ Defendant argues that because Plaintiff withdrew her discriminatory dis-

charge claims based on sex and national origin at the end of her MSPB hearing, she failed to exhaust administrative remedies with respect to those claims and therefore cannot assert them here. Plaintiff explains in her opposition that,

> [i]n light of the total refusal of the administrative judge at the MSPB hearing to allow the plaintiff and her counsel to place into evidence facts and data of discrimination or call witnesses or produce documents to sustain her claim of discrimination, the plaintiff merely withdrew the claim of "gender" and "national origin discrimination" because of the lack of due process accorded to her by the judge. At no time did she waive any rights to pursue or appeal . . . .

Paper 13, at 8.

The MSPB is an independent, quasi-judicial federal administrative agency established to review civil service decisions. See 5 U.S.C. § 7701. In certain situations, federal employees may assert Title VII claims in connection with an appeal to the MSPB as a "mixed case" governed by the procedures set forth in 5 U.S.C. § 7702. Plaintiff appealed the NRC's removal action to the MSPB in February 2002. According to the Initial Decision issued by the MSPB Administrative Judge on August 28, 2002, Plaintiff withdrew her claims of discrimination based on sex and national origin at the end of the MSPB hearing while continuing to pursue her retaliation claim before the MSPB. See Paper 7, Ex. 10, at 2.

■■■■ It is well-established that a complainant who withdraws an appeal before the MSPB fails to exhaust administrative remedies and is barred from filing a civil

---

4. In the alternative, Defendant moves for summary judgment on Plaintiff's hostile work environment claim. That motion will be con-

sidered in the discussion on summary judgment *infra*.

action in federal court. *See Vinieratos v. U.S. Dep't of Air Force*, 939 F.2d 762, 770–71 (9th Cir.1991) ("Previous decisions by this court and others have held that abandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review."); *Valentine–Johnson v. Roche*, 238 F.Supp.2d 911 (E.D.Mich.2003) ("... plaintiff prematurely withdrew her appeal to the MSPB. Not only did plaintiff not perfect her appeal before the MSPB, she did not include any discrimination claims related to her termination in her MSPB appeal. Plaintiff's termination-related claims are barred by her failure to exhaust administrative remedies with the MSPB."); *Howland v. U.S. Postal Serv.*, 209 F.Supp.2d 586, 590 (W.D.N.C.2002) ("By withdrawing his MSPB appeal, Plaintiff has failed to exhaust his administrative remedy."); *Hay v. Sec'y of Army*, 739 F.Supp. 609, 612 (S.D.Ga.1990) ("In addition, after filing the instant case, plaintiff withdrew his MSPB appeal.... Consequently, it is clear that the MSPB did not have the opportunity to review the merits of plaintiff's employment discrimination claims. In effect, plaintiff is circumventing the administrative review process, which is central to Title VII, by raising his employment discrimination claims in this Court without first obtaining substantive review of those claims from the appropriate administrative agencies. I conclude that plaintiff has failed to exhaust his administrative remedies as required by Title VII.") (internal citations omitted); *Economou v. Caldera*, No. 99 Civ. 12117 AJP, 2000 WL 1844773 at * 16 (S.D.N.Y. Dec. 18, 2000) ("Should the employee voluntarily withdraw his MSPB complaint prior to a final decision on the merits, he will be precluded from raising those claims in a subsequent discrimination action in federal court.") (citations omitted). By ex-

tension therefore, a complainant who withdraws certain claims in an appeal to the MSPB before a final decision on the merits also fails to exhaust administrative remedies with respect to those particular claims.

Plaintiff also counters Defendant's motion to dismiss by arguing that, when she withdrew her termination claims based on gender and national origin from the MSPB appeal, those claims were still viable in her complaint filed with the NRC's EEO office. While it is true that a federal employee may either file a mixed case complaint with the employer agency's EEO office or file a mixed case appeal with the MSPB, that employee may not elect both avenues simultaneously. *See* 29 C.F.R. 1604.302(a)-(b) (1996); *Briggs v. Dalton*, 984 F.Supp. 353, 354–55 (D.Md.1997) (citing *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir.1995)); *see also Economou*, 2000 WL 1844773 at *16. In the present case, Plaintiff pursued her termination claims in a mixed case appeal before the MSPB. Because she withdrew the claims based on gender and national origin from the MSPB appeal, those claims must be dismissed for failure to exhaust administrative remedies.

### C. Summary Judgment

#### 1. Rule 56(f) Affidavit and Request for Time for Discovery

█ Plaintiff filed an affidavit pursuant to Fed.R.Civ.P. 56(f) stating that discovery has not yet been undertaken in this case and that summary judgment therefore would be premature at this time. Rule 56(f) states that:

[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may or-

der a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Fourth Circuit has held that the party opposing summary judgment is required to "focus our attention on an affidavit ... that particularly specifies legitimate needs for further discovery." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir.1995); *Fairclough v. Board of County Commissioners of St. Mary's County, Maryland*, 244 F.Supp.2d 581, 586 (D.Md.2003); *Morrow v. Farrell*, 187 F.Supp.2d 548, 551 (D.Md.2002). In identifying her specific needs in the instant case, Plaintiff explains that she

> has not had the opportunity to take the depositions of the officials of the agency who was [sic] responsible for her termination from the agency. Moreover, the plaintiff has not had the opportunity to secure the appropriate government documents on the alleged rules and regulations that the plaintiff violated that led to her termination from her position with the agency.

Paper 13, Rule 56(f) Declaration. These reasons are insufficient to justify a stay in the court's consideration of summary judgment. The MSPB record includes affidavits of the relevant agency officials and witnesses, many of whom also testified under oath at the MSPB hearing. Furthermore, a full and detailed factual record was created through an adversarial process before the MSPB. Plaintiff cannot claim that there has not been time or opportunity to develop the facts of this case. Plaintiff has not demonstrated a need for time for discovery in this case, therefore consideration of summary judgment, where appropriate, is not premature.

### 2. Hostile Work Environment Claim

In the alternative to his motion to dismiss this claim, Defendant moves for summary judgment on the ground that Plaintiff has failed to establish a *prima facie* hostile work environment case. In order to establish a *prima facie* case of hostile work environment harassment, Plaintiff must show: (1) that she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex, race, color, national origin, or religion; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer. *See Smith*, 202 F.3d at 241. Defendant argues that Plaintiff cannot establish that the harassment she claims she suffered was because of gender or that the harassment was sufficiently pervasive or severe to create a hostile work environment.

In response to Defendant's first challenge, Plaintiff states only that "[t]he evidence of plaintiff clearly shows that she was harassed because of the factors cited in her complaint, such as gender and national origin." Paper 13, at 7. In order to establish that the harassment she suffered was based on her gender or national origin,[5] Plaintiff must do more than just claim membership in a protected class; Plaintiff show that she was "singled out for adverse treatment by the harasser because of her membership in a group protected by Title VII." *Doe v. Petaluma City School District*, 949 F.Supp. 1415, 1423 (N.D.Ca. 1996); *see also Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir. 1996) (a plaintiff must show that but for her membership in a protected class, she would not have been subjected to harass-

---

**5.** Although Defendant does not specifically challenge Plaintiff's ability to establish that the unwelcome conduct was based on national origin as well, the same analysis applies.

ment). It is unclear what particular evidence Plaintiff proffers to support the proposition that she was harassed because of her gender and national origin. Plaintiff submits a lengthy 53–paged narrative affidavit and 49 exhibits along with her opposition. A review of these materials shows no direct evidence of sex- or national origin-based harassment; none of the events Plaintiff describes as creating a hostile work environment explicitly refers to Plaintiff's gender or national origin. Plaintiff's affidavit documents that she experienced unpleasant treatment by her supervisors, however, evidence that the treatment was motivated by sex-based or national origin-based discrimination is circumstantial at best. According to Plaintiff, when Mulley criticized her writing ability in August 1997, he questioned her about her background and asked when she had learned English since it was her second language, Paper 13, Plaintiff's Affidavit, at 5; during the same exchange, when Plaintiff told Mulley that she had received outstanding evaluations from her supervisors at her previous employment, Mulley "basically insinuated that the only way [Plaintiff] would have received that rating was through inappropriate actions," *id.;* in December 1997, the male agent who wrote the final report on a case that she had worked on received the award for that case while she did not, *id.,* at 6; and Plaintiff also asserts that, based on a conversation about her ethnic background that she had with Scenna, Scenna knew of her national origin and that she also spoke Arabic. *Id.,* at 8. This circumstantial evidence, however, is insufficient to support a reasonable inference that, but for Plaintiff's membership in a protected class, she

would not have been subjected to the entire pattern of treatment she claims constituted a hostile work environment. *See, e.g., Alfonso v. GTE Directories Corp.,* 137 F.Supp.2d 1212, 1222 (D.Or.2001) (finding that the record in that case contained no evidence connecting allegedly hostile actions of the plaintiff's supervisors with sex-based discriminatory motives).

 Furthermore, Plaintiff fails to establish that the harassment she claims she suffered was sufficiently pervasive or severe to create a hostile work environment. According to *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the determination of the sufficiency of an environment's hostility or abusiveness should be made by considering the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.,* at 23, 114 S.Ct. 367. In response to Defendant's argument, Plaintiff states that "[t]his treatment was severe in that she was placed illegally on administrative leave and ultimately terminated.... The totality of the scenario of the mistreatment that she suffered at the hands of the supervisors of the agency clearly shows that the discriminatory conduct was pervasive and severe." Paper 13, at 7. Again, Plaintiff's opposition fails to identify specific facts or evidence in support of this claim. Even referring to the series of events and complaints that the SBCR Letter defines as comprising Plaintiff's hostile work environment claim and the lengthy narrative contained in Plaintiff's affidavit,[6]

6. In addition to the conduct and events listed in the NRC's Partial Acceptance and Dismissal of Claims letter, Paper 7, Ex. 3, at 2–3, Plaintiff's affidavit describes the following instances in support of her hostile work environment claim: Stryker was generally disrespectful to women employees and ignored their concerns; Mulley and Stryker refused

Plaintiff has not managed to establish that the treatment she suffered was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment. Plaintiff's claims describe treatment that was often disrespectful, frustrating, critical, and unpleasant. The evidence, however, even drawing the inferences therefrom in the light most favorable to Plaintiff, does not establish treatment that is physically threatening or humiliating, or otherwise sufficiently severe to create a hostile work environment prohibited under Title VII. Plaintiff describes one particular encounter with Mulley where Mulley yelled at Plaintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent Plaintiff from leaving while he continued to yell at her. Paper 13, Plaintiff's Affidavit, at 9. This incident is the most obviously severe—in terms of hostility and physicality—of the ones Plaintiff describes, nevertheless, it occurred only once and does not therefore establish sufficiently frequent—i.e., pervasive—hostile treatment. As the Fourth Circuit has pointed out, "Title VII is not a federal guarantee of refinement and sophistication in the workplace—in this context, it prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Hartsell v. Duplex Products, Inc.*, 123

F.3d 766, 772 (4th Cir.1997). Defendant's motion for summary judgment on Plaintiff's hostile work environment claim will therefore be granted.

### 3. Retaliation Claim

 Defendant acknowledges that Plaintiff did properly exhaust her administrative remedies with respect to her retaliation claim. Defendant moves for summary judgment on Plaintiff's retaliation claim, however, arguing that the NRC had "indisputable legitimate non-discriminatory reasons for its actions, which have not been challenged." In order to survive summary judgment, Plaintiff must establish a *prima facie* case of retaliatory discharge. Plaintiff must offer evidence from which a reasonable jury could find that (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *See Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996). Once Plaintiff establishes her *prima facie* case of retaliation, the burden shifts to Defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action, *see Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989),

Plaintiff's request for promotion to GS–12 citing the fact that she used bullets in her reports even though Plaintiff was instructed to use bullets in a writing workshop that she and other agents participated in; in August 1997, Mulley questioned Plaintiff about her English language abilities and about her employment history, insinuating that the only way she had received outstanding performance evaluations in the past was by engaging in inappropriate actions with her former supervisors; when Plaintiff became upset and tried to leave, Mulley yelled at her to sit down; Plaintiff was then required to rewrite all of her reports without using bullet points; Plaintiff was told

that if she wanted to keep her job, she had better do as she was told; in April 2000, Mulley told Plaintiff she was incompetent, pushed her down in a chair to keep her from standing up, yelled and screamed at Plaintiff; starting in May 2000, Scenna and Mulley repeatedly criticized Plaintiff's performance; in April 2001, after Plaintiff had initiated the performance appraisal grievance process, her work environment became very hostile and her supervisors regularly refused to cooperate with her requests for information and generally made it difficult for her to accomplish tasks in the office. *Id.*, at 1–19.

after which the burden shifts back to Plaintiff to produce evidence that Defendant's proffered reason was a pretext for intentional discrimination. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002).

Defendant argues that, even if Plaintiff has established a *prima facie* case of retaliatory discharge, Defendant has identified and produced evidence that the NRC had legitimate, non-discriminatory reasons for terminating Plaintiff—i.e., Plaintiff was terminated for making false statements, failing to follow supervisory instructions, and improperly accessing sensitive information. The MSPB found in favor of Defendant on these counts. Paper 7, Ex. 10.

Plaintiff proffers no evidence to contradict the record's demonstration that Defendant's non-discriminatory reasons for terminating Plaintiff were legitimate.[7] Plaintiff's only "evidence" that Defendant's reason for terminating her was a pretext for intentional discrimination is her insistence that the reason Defendant stated was wrong—i.e., that Plaintiff did not make false statements, etc. There is no evidence, however, that Defendant's reason was not the real reason, i.e., that the agency did not believe that Plaintiff lied when it terminated her employment. This court's task is not to sit, in this context, as a super personnel agency. It is not enough for Plaintiff to allege pretext based on her own view of the truth; in order to rebut Defendant's non-discriminatory reason, Plaintiff's task is to proffer evidence showing that Defendant's stated reason was not the real reason for its actions.

Plaintiff has proffered no such evidence and Defendant's motion for summary judgment will therefore be granted.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for leave to file surreply will be denied. Defendant's motion to dismiss will be granted with respect to Plaintiff's discriminatory denial of promotion claim, denial of rights claim, and discriminatory discharge claim based on gender and national origin. Plaintiff's request to defer consideration of summary judgment will be denied. The court will grant Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim and retaliation claim. A separate order will follow.

## ORDER

For the reasons stated in the foregoing memorandum opinion, it is this 23rd day of June, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's motion for leave to file surreply BE, and the same hereby IS, DENIED;

2. Plaintiff's request for deferral of consideration of summary judgment BE, and the same hereby IS, DENIED;

3. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) BE, and the same hereby IS, GRANTED with respect to Plaintiff's discriminatory denial of promotion, denial of rights under grievance

[7]. Defendant argues that Plaintiff's retaliatory discharge claim must fail because she has not challenged the MSPB's finding that the NRC was justified in terminating Plaintiff for non-discriminatory reasons. Non–Title VII claims decided by the MSPB are subject only to arbitrary or capricious review or reviewed for abuse of discretion. 5 U.S.C. § 7703(c); *see Hooven–Lewis v. Caldera*, 249 F.3d 259, 265–66 (4th Cir.2001). As Defendant points out, Plaintiff has not sought review of the MSPB's determination with respect to the non-discriminatory reasons for her termination in her Complaint. The court does not need to reach this question, however, for the reasons stated above.

procedures, and gender- and national origin-based discriminatory discharge claims;

4. Plaintiff's claims for discriminatory denial of promotion, denial of rights, and discriminatory discharge based on gender and national origin BE, and the same hereby ARE, DISMISSED;

5. Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED with respect to Plaintiff's hostile work environment and retaliation claims;

6. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant Richard A. Meserve, Chairman of the Nuclear Regulatory Agency, and against Plaintiff Susan Khoury with respect to Plaintiff's hostile work environment and retaliatory discharge claims; and

7. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.